UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANGELA KING, M.D.                    CIVIL ACTION

VERSUS                               NO. 08-1060

UNIVERSITY HEALTHCARE               MAGISTRATE JUDGE
SYSTEM, L.C.                         JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

This is an employment dispute that probably would never have occurred, except for the disruptions and duress caused by Hurricane Katrina. At the time of the storm and during its aftermath, plaintiff, Dr. Angela King, was an anesthesiologist employed by defendant, University Healthcare System, L.C. ("University Healthcare"). Dr. King worked at Tulane University Hospital in New Orleans and Tulane-Lakeside Hospital in Metairie, Louisiana. The parties' employment relationship ended in 2007, when the term of Dr. King's written employment contract lapsed without renewal.

After suit was filed, the case was referred to me for all proceedings and entry of judgment upon the written consent of all parties in accordance with 28 U.S.C. § 636(c). Record Doc. No. 7. It was tried to a jury for five (5) days during July 27-31, 2009. Dr. King asserted the following five claims, which were submitted to the jury: (1) Defendant violated Title VII by discriminating against plaintiff on the basis of her gender. (2) Defendant retaliated against plaintiff by refusing to negotiate a new employment agreement and by terminating her employment in violation of Title VII. (3) Defendant

violated the Equal Pay Act, 29 U.S.C. §§ 206(d)(3), 216(b), 260, by failing to compensate plaintiff on the same basis as male anesthesiologists for the same work after Hurricane Katrina. (4) Defendant breached an oral modification of its written contract with plaintiff that she would be paid at an hourly rate for the excess hours that she worked after Hurricane Katrina. (5) Defendant violated the Louisiana Unpaid Wages statute, La. Rev. Stat. § 631, by failing to pay her a promised "excess hours bonus" that she had earned. University Healthcare denied any discrimination, retaliation or unequal pay based on plaintiff's gender. Relying upon its written contract with plaintiff, defendant also denied that an oral contract modification existed or could exist when the parties' written employment agreement contained an integration clause. Defendant also denied that the bonus was "wages" for purposes of the Louisiana statute.

At trial, the jury found for plaintiff on two claims and for defendant on three claims. On one hand, the jury returned a verdict in favor of defendant on plaintiff's two Title VII claims and her breach of contract claim. On the other hand, the jury found that University Healthcare was liable for violating both the Equal Pay Act and the Louisiana Unpaid Wages statute by failing to pay plaintiff wages that she had earned. The jury awarded Dr. King $32,700, which was the amount of the $33,000 bonus that the evidence established was paid to other anesthesiologists, minus $300 that the evidence showed had already been paid to Dr. King for extra hours worked after Hurricane Katrina. The court awarded an additional $32,700 as liquidated damages under the Equal Pay Act.

The court entered judgment in favor of Dr. King in the amount of $32,700 with an additional $32,700 as liquidated damages under the Equal Pay Act, together with penalties pursuant to La. Rev. Stat. § 23:632 and reasonable attorney's fees. Upon the stipulation of the parties during trial, the judgment reserved for the court to determine, after the filing of post-trial/post-judgment motions, the amount of the awardable penalty under the Louisiana wage statute. As provided in the pretrial order, the judgment also reserved the issue of the parties' entitlement to and, if so, the quantum of awardable attorney's fees, to be determined in post-trial motions.

Three post-trial/post-judgment motions are now pending: (1) Motion for Attorneys' Fees filed by defendant, University Healthcare, Record Doc. No. 191; (2) Plaintiff's Motion to Determine Wage Penalty, Record Doc. No. 192; and (3) Plaintiff's Motion to Set Amount of Attorneys' Fees, Record Doc. No. 193. Opposition and reply memoranda were filed and considered. Record Doc. Nos. 200, 201, 202, 208, 211 and 213. Having considered the record, the verdict of the jury, the submissions of the parties and the applicable law, and for the following reasons, IT IS ORDERED that all three of the pending motions are GRANTED IN PART AND DENIED IN PART as follows.

I.    DEFENDANT'S MOTION FOR ATTORNEYS' FEES

A.    Defendant Was Required to Enforce the Terms of the Agreement

University Healthcare seeks an award of reasonable attorney's fees based on the jury's verdict in its favor on plaintiff's breach of contract claim.  Under Louisiana law, which applies to this claim, attorney's fees are recoverable only when authorized by a statute or a contract.  Peyton Place, Condo. Assocs., Inc. v. Guastella, No. 08-365, 2009 WL 1508500, at *10 (La. App. 5th Cir. May 29, 2009); Good v. Saia, 9 So. 3d 1070, 1073 (La. App. 4th Cir. 2009).  University Healthcare relies on Section 12.3 of Dr. King's employment contract, which provides:  "In the event that either party shall be required to enforce the terms of this Agreement, whether with or without arbitration, the prevailing party shall be entitled to recover the costs of such action, including, but not limited to a reasonable attorney's fee."  Joint Trial Exh. 1, Employment Agreement dated March 15, 2005.

Louisiana contract law governs this agreement.

A contract is the law between the parties.  In determining the terms of a contract, the court's duty is confined to the ascertainment of the limits of the rights and obligations of the contracting parties as they have defined for themselves.  Courts are bound to give legal effect to all written contracts according to the true intent of the parties.  This intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. . . .
Under Louisiana law, when there is any doubt about the meaning of an agreement, the court must ascertain the common intention of the parties, rather than adhering to the literal sense of the terms.  The trial court's initial inquiry should be whether the words of the contract clearly and explicitly

4

set forth the intent of the parties. This methodology limits the interpretation of a contract to the internal language of the contract itself. If this intent cannot be adequately discerned from the contract itself, the court may then consider evidence as to the facts and circumstances surrounding the parties at the time the contract was made.

Whether a contract is ambiguous or not is a question of law.

Miller v. Miller, 1 So. 3d 815, 817-18 (La. App. 2d Cir. 2009) (citations omitted).

The parties agree that Section 12.3 of their contract is unambiguous. University Healthcare argues that the provision is not limited to cases in which the party who is "required to enforce" the contract is the same party who initiated the action. Defendant contends that it was required to enforce the agreement as a defense to plaintiff's oral contract claim and that it prevailed on that claim because of its defensive enforcement of the written contract. Specifically, University Healthcare argues that its evidence convinced the jury that the integration clause (Section 12.4)[1] of the agreement precluded the formation of any subsequent oral contract, and that the authority clause (Section 9)[2] in Dr. King's contract precluded any physician, including her supervisor, Dr. Charles Fox, from making promises that would bind defendant to an oral contract.

---

[1]Section 12.4 of the agreement provides: "This agreement shall constitute the entire agreement of the parties hereto and may not be amended except in writing signed by all the parties hereto. No oral statements or prior written materials not specifically incorporated herein shall be of any force or effect." Joint Trial Exh. 1.

[2]Section 9 provides: "The Physician shall not have the right or authority and hereby expressly covenants not to enter into a contract in the name of the Employer or the Hospital, in any way, without the express written consent of the Employer." Id.

Plaintiff agrees with defendant that the party "required to enforce" the contract does not have to be the same party who initiated the lawsuit, but she argues that Section 12.3 does not permit defendant to recover attorney's fees for prevailing on plaintiff's breach of <u>oral</u> contract claim in this case. She contends that Section 12.3 can only reasonably apply when one party is "required to" bring a proceeding "to enforce" the other party's performance (or recover damages for non-performance) under that contract. Although defendant characterizes Dr. King's breach of contract claim as alleging that the written employment agreement was orally modified, plaintiff contends that the oral contract was a separate, new contract that the parties negotiated to address a situation caused by the catastrophic aftermath of Hurricane Katrina, which was not covered by the written agreement. Dr. King says she never alleged that University Healthcare failed to perform any obligation under the written agreement. Therefore, she maintains that defendant was not "required to" raise the terms of or "enforce" the written contract as a defense to her claim of a separate oral contract.

Dr. King also argues that it would lead to an absurd result if Section 12.3 is interpreted to allow defendant to recover attorney's fees just because defendant raised the integration clause before the jury, when the court ruled twice before trial (in denying defendant's motion for summary judgment and in denying defendant's motion in limine to preclude evidence of an oral contract) that the integration clause does not bar a subsequent oral contract.

Plaintiff further argues that University Healthcare was not "required to enforce" Section 9, the authority clause, of <u>Dr. King's</u> agreement in order to prove that <u>Dr. Fox</u> had neither actual nor apparent authority to bind defendant to an oral contract. Dr. King asserts that <u>her</u> lack of authority to bind defendant, based on Section 9 of <u>her</u> contract, was irrelevant to the jury's verdict. She contends that University Healthcare actually relied on the identical Section 9 of <u>Dr. Fox's</u> agreement as its evidence, but that it would be absurd to hold that defendant's introduction of evidence about <u>Dr. Fox's</u> contract enforced any terms of <u>her</u> agreement, even if the jury found that Dr. Fox had no actual or apparent authority to bind defendant to an oral contract.

As an initial matter, in response to part of plaintiff's argument, I note that my prior rulings concerning the admissibility of plaintiff's proof concerning the alleged oral agreement do <u>not</u> preclude defendant's contractual claim for attorney's fees as a matter of law. My prior rulings, and the citations upon which they were based, merely noted that

> "even if the written contract contains a provision requiring that all modifications be in writing, . . . either oral agreement or conduct can nonetheless prove modification. In all instances, however, the party urging modification must establish that [the] parties mutually consented to the agreement as modified. . . . It is a question of fact as to whether there were oral agreements that modified the written contract. The party asserting the modification of the obligation must prove the facts or acts giving rise to the modification. . . . The question of whether evidence offered by the plaintiff corroborates his claim under an oral contract is a finding to be made by the trier of fact . . . ."

Record Doc. No. 169, at pp. 3-5 (citations omitted).  Thus, fact-finding by the jury, including its review of the terms of the written physician contracts and the witness testimony about the meaning of the contractual terms and their words and actions constituting the alleged modification, played an important part in the resolution of this case.  My prior rulings concerning the law to be applied to this fact finding, in which consideration of the written agreements was a major component, do not preclude defendant's contractual claim for attorney's fees.  In this case, the jury clearly found that plaintiff failed to prove the alleged oral modification of her contract as a matter of fact.

I find that Section 12.3 unambiguously refers to "either party" as a potentially prevailing party.  A prevailing defendant may recover its attorney's fees, but only if it was "required to enforce the terms of" the employment agreement to succeed.  University Healthcare clearly was "the prevailing party" on Dr. King's breach of contract claim.  The determinative issue for this motion is whether defendant was "required to enforce the terms of this Agreement" to prevail on plaintiff's claim for breach of an allegedly separate, new, oral contract.

I find that defendant was required to enforce the terms of Dr. King's employment agreement to defeat her oral contract claim.  Throughout this action, including at trial, University Healthcare used the written contract terms as a defense to plaintiff's oral contract claim.  Plaintiff's claim was essentially about compensation, which is a term of employment that is covered in detail by her written contract.  Defendant presented

evidence concerning the integration clause to defend against Dr. King's claim that University Healthcare intended to modify the written contract or enter into a separate oral contract. Defendant introduced evidence about the authority clause of Dr. King's contract to show that she could not reasonably have believed that Dr. Fox, whose employment agreement had an identical Section 9, had the authority to bind defendant to an oral contract concerning plaintiff's compensation.

The Louisiana cases cited by defendant are persuasive. In <u>LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc.</u>, 983 So. 2d 217 (La. App. 4th Cir. 2008), the defendant tenant prevailed the plaintiff landlord's claim that the tenant was in default of a written lease. The court awarded the defendant attorney's fees under a lease provision that stated: "If either Landlord or Tenant retains an attorney <u>to enforce the terms of or determine rights under this Agreement, the prevailing party</u> shall be entitled to recover reasonable costs, attorney's fees and expenses." <u>Id.</u> at 229 (emphasis added). This provision is similar to Section 12.3 of Dr. King's contract. <u>LHO New Orleans LM</u> supports University Healthcare's contention that it was required "to enforce the terms of" the written contract to prevail against plaintiff's breach of oral contract claim. Judge Fallon's opinion in <u>My Favorite Year, Inc. v. Thomas Jefferson Constr. Corp.</u>, No. 97-2423, 1999 WL 64932 (E.D. La. Feb. 4, 1999) (Fallon, J.), also supports University Healthcare's argument. In that case, the plaintiff tenant sued to enforce the defendant landlord's obligations under the written lease. The landlord defeated the tenant's claim

9

and successfully counterclaimed for reformation of the lease and additional rent. The landlord was entitled to attorney's fees under the provision allowing such fees "[i]n the event that it shall become <u>necessary for either party to enforce the provisions of the lease</u> by legal action, or employ attorneys to recover the obligations hereunder." <u>Id.</u> at *3 (emphasis added).

I find that, as in <u>LHO New Orleans</u> and <u>My Favorite Year</u>, University Healthcare was "required to enforce the terms of" plaintiff's employment agreement to prevail on her claim of breach of an oral contract. Thus, Section 12.3 of the employment agreement applies, and defendant may recover its reasonable attorney's fees for defending against that particular claim.

B. <u>Law Governing an Award of Reasonable Attorney's Fees to Defendant</u>

University Healthcare requests $427,892 in attorney's fees, representing 100% of the fees it expended in this case, after its counsel made certain voluntary deductions in the exercise of billing judgment. Defendant did not seek any fees for working on the instant post-trial motions. Alternatively, if the court finds the requested amount excessive, defendant seeks 50% of its actual fees, or $213,946. Defendant does not explain why it chose that percentage. Record Doc. No. 191-2, defendant's memorandum in support, at p. 20.

Section 12.3 of Dr. King's contract provides that "the prevailing party shall be entitled to recover the costs of such action, including, but not limited to a reasonable

attorney's fee." Louisiana law governs the award of reasonable attorney's fees based on a contract. University Healthcare acknowledges in its memorandum that Louisiana law is substantially similar to the federal lodestar method for determining reasonable attorney's fees, and uses the lodestar to calculate its fees. Dr. King does not dispute the use of that method.

Because the "fundamental" requirement of reasonableness and the factors used to determine an award of attorney's fees under Louisiana law, see Peyton Place, Condo. Assocs., Inc., 2009 WL 1508500, at *10; Ollis v. Miller, 886 So. 2d 1199, 1209 (La. App. 2d Cir. 2004); Richardson v. Parish of Jefferson, 727 So. 2d 705, 707 (La. App. 5th Cir. 1999); Mayeur v. Campbell, 666 So. 2d 366, 370 (La. App. 1st Cir. 1995), are substantially similar to the federal lodestar method, I will use the lodestar analysis to determine a reasonable attorney's fee for defendant.

Determination of a reasonable attorney's fee is a two-step process that begins with determination of the lodestar amount.

> A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. After making this calculation, the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting.

Heidtman v. County of El Paso, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing City of

Burlington v. Dague, 505 U.S. 557, 562 (1992); Shipes v. Trinity Indus., 987 F.2d 311,

319-20 (5th Cir. 1993)).

The Johnson factors are:

(1) the time and labor required; (2) the novelty and difficulty of the issues;
(3) the skill required to perform the legal services properly; (4) the
preclusion of other employment by the attorney; (5) the customary fee;
(6) whether the fee is fixed or contingent; (7) the time limitations imposed
by the client or circumstances; (8) the amount involved and results
obtained; (9) the experience, reputation, and ability of the attorneys; (10)
the undesirability of the case; (11) the nature and length of the professional
relationship with the client; and (12) the award in similar cases.

Johnson, 488 F.2d at 717-19.

"[O]f the Johnson factors, the court should give special heed to the time and labor

involved, the customary fee, the amount involved and the result obtained, and the

experience, reputation and ability of counsel." Migis v. Pearle Vision, Inc., 135 F.3d

1041, 1047 (5th Cir. 1998) (citation omitted). Three of the Johnson factors, complexity

of the issues, results obtained and preclusion of other employment, are presumably fully

reflected and subsumed in the lodestar amount. Heidtman, 171 F.3d at 1043 (citing

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565

(1986)). After Johnson was decided, the "Supreme Court has barred any use of the sixth

factor," whether the fee is fixed or contingent. Walker v. United States Dep't of Housing

& Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996) (citing City of Burlington, 505 U.S. at 567).

"The lodestar . . . is presumptively reasonable and should be modified only in exceptional cases."  Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993) (citing City of Burlington, 505 U.S. at 562); accord Heidtman, 171 F.3d at 1043.

Although the party seeking attorney's fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, the party seeking reduction of the lodestar bears the burden of showing that a reduction is warranted.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Wegner v. Standard Ins. Co., 129 F.3d 814, 822 (5th Cir. 1997); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 329 (5th Cir. 1995) (hereinafter "LP&L").

C.    Whether the Claims That Were Tried Can Be Segregated for Purposes of Awarding Attorney's Fees

Defendant is contractually entitled to recover attorney's fees for its defense of plaintiff's breach of contract claim.  Before calculating the lodestar, I consider whether University Healthcare can recover for all of the time that its attorneys spent working on the case because, as it argues, the work done on the other claims is incapable of being segregated from the contract claim.

Five claims were tried to the jury:  gender discrimination and retaliation under Title VII, violation of the Equal Pay Act, breach of contract and violation of the

Louisiana Unpaid Wages statute. Plaintiff's complaint, as amended, included a sixth claim that the hospital was unjustly enriched by its failures to pay her. Record Doc. No. 11. However, no unjust enrichment claim was included in the pretrial order, Record Doc. No. 148, neither party requested jury charges concerning it, and no unjust enrichment claim was tried. The pretrial order supersedes the pleadings and controls the course and scope of the proceedings thereafter. Plaintiff's failure to include an unjust enrichment claim in the pretrial order waived that claim. Fed. R. Civ. P. 16(d), (e); In re Katrina Canal Breaches Litig., 309 Fed. Appx. 836, 2009 WL 290474, at *2 (5th Cir. 2009).

Although University Healthcare states repeatedly in its memoranda in connection with all three pending post-trial motions that plaintiff had an "unjust enrichment/apparent authority" claim, apparent authority is not a claim for relief. Rather, the scope of Dr. Fox's apparent authority to bind defendant to an oral contract was an issue in plaintiff's breach of contract claim.

As for unjust enrichment, University Healthcare moved for summary judgment on all of plaintiff's claims, but its only mention of unjust enrichment was in the introductory paragraph of its memorandum. Defendant made no argument and alluded to no evidence concerning such a claim. Record Doc. No. 109. Nor did plaintiff respond with any argument or evidence concerning the legal or factual elements of an unjust enrichment claim. It is clear that the parties focused only on plaintiff's five claims under Title VII,

the Equal Pay Act and the Louisiana Unpaid Wages statute during both pretrial proceedings and the trial and that no unjust enrichment claim was included in the final pretrial order.

University Healthcare contends that both parties spent the substantial majority of their efforts on plaintiff's retaliation and breach of contract claims because those claims had the highest damages potential. Therefore, defendant argues that it should be awarded all of its requested fees. Neither party addresses the legal standards governing how fees should be awarded when a prevailing party is entitled to fees on only one claim out of several.

"A court need not segregate fees when the facts and issues are so closely interwoven" that the time spent on separate claims or against separate defendants cannot reasonably be divided. Mota v. University of Tex., 261 F.3d 512, 528 (5th Cir. 2001) (citing Abell v. Potomac Ins. Co., 946 F.2d 1160, 1169 (5th Cir. 1991)). The question here is whether the facts and issues are so closely interwoven that defendant should recover all of its attorney's fees. The court must ask whether "the losing claims" or, in this case, the four claims as to which defendant is not entitled to recover any fees, "included 'a common core of facts' or were 'based on related legal theories' linking them to the successful claim." Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992) (quoting Hensley, 461 U.S. at 435); accord Brady v. Fort Bend County, 145 F.3d 691, 717 (5th Cir. 1998); LP&L, 50 F.3d at 327. If the answer to this inquiry is "yes," then the

prevailing party may recover for the fees reasonably incurred in pursuing or defending against the intertwined claims.  Id.

In the instant case, plaintiff's breach of oral contract claim was based on different facts and legal theories than her other claims of retaliation, intentional sex discrimination, unequal pay based on gender and failure to pay earned wages.  The evidence that plaintiff used to try to prove an oral contract and the evidence that defendant used to defeat the claim was largely independent of the evidence needed to prove, or defend against, the other claims.  Therefore, I cannot accept University Healthcare's argument that it is entitled to 100% of its attorney's fees.  That amount is clearly excessive, particularly when Dr. King is entitled to recover attorney's fees as the prevailing party on two other claims under the federal Equal Pay Act and the Louisiana wage statute.  Nor has defendant presented any principled basis for its alternative suggestion that it should receive 50% of its billed fees.

Although I have thoroughly reviewed defendant's fee invoices, a line item review in this opinion would be extremely time consuming and fruitless in trying to segregate reasonably the time that defendant's counsel spent on each claim.  Much of the difficulty is caused by the tendency of some attorneys who worked on the case to use block billing and/or truncated task descriptions.  I recognize that many tasks, such as drafting an answer to the complaint or preparing or responding to discovery requests, necessarily encompassed all or several of plaintiff's claims.  However, more detail and clarity

concerning work on discrete claims and issues was certainly possible, as demonstrated by the entries of some attorneys who noted the individual claims or issues on which they worked during a particular period of time. The problem in this instance is not that the facts and legal issues of all the claims were so closely interwoven as to be inseparable, but that so much of the billed time was broadly described in an unsegregated way.

"Where it would be an exercise in futility to separate out the legal services rendered for each claim, the fee should simply be determined as a function of degree of success." Lipsett, 975 F.2d at 940-41. The district "court need not explicitly calculate the lodestar to make a reasonable award" and has the discretion to award "only a small fraction of the amount requested" when attorney's fees are due only for a portion of the litigation, provided that the documentation of fees is adequate. No Barriers, Inc. v. Brinker Chili's Texas, Inc., 262 F.3d 496, 500-01 (5th Cir. 2001) (citing Wegner, 129 F.3d at 822-23). Thus, it is appropriate to make a percentage reduction in University Healthcare's fee request to reflect its entitlement to fees on the contract claim only. Pruett v. Harris County Bail Bond Bd., 499 F.3d 403, 418 (5th Cir. 2007) (citing Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-90 (1989)); Fine v. Ryan Int'l Airlines, 305 F.3d 746, 757 (7th Cir. 2002) (citing Hensley, 461 U.S. at 435); Jason D.W. v. Houston Indep. Sch. Dist., 158 F.3d 205, 211 (5th Cir. 1998); Rendon v. AT & T Tech., 883 F.2d 388, 399 (5th Cir. 1989).

University Healthcare is entitled to reasonable attorney's fees on only one claim out of five, or 20%, of the claims that proceeded to trial. Thus, I will award defendant an attorney's fee of 20% of the amount it has requested, after I make certain deductions, as described in the following sections of this opinion.

D.   The Hourly Rates Charged by Defendant's Counsel

To calculate the lodestar, I first must determine whether the rates charged by defendant's counsel were reasonable. Defendant's memorandum includes the affidavit of its counsel of record, Leslie W. Ehret of the law firm of Frilot L.L.C., attesting to the attached contemporaneous billing invoices, the experience of each attorney and the customary hourly rates for all attorneys and paralegals who worked on this case. Record Doc. No. 191-4, Defendant's Exh. B. University Healthcare submitted an affidavit from Julie Livaudais, an attorney at another law firm in New Orleans, who was not involved in the instant case and who has practiced in the field of labor and employment law for 27 years. Livaudais attests that the hourly rates charged by defendant's lawyers in this case are customary and reasonable in the New Orleans area for attorneys with their experience. Record Doc. No. 191-8, Defendant's Exh. C.

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested. LP&L, 50 F.3d at 328. Dr. King does not oppose the hourly rates sought by defendant's counsel.

I find that the requested rates for defendant's attorneys, law clerks and paralegals are well within the range of reasonable rates in the New Orleans market for attorneys, law clerks and paralegals with the qualifications and experience established by the evidence. These hourly rates are also in line with recent decisions of the Fifth Circuit and this court awarding fees for legal work in the New Orleans market. Thompson v. Connick, 553 F.3d 836, 868 (5th Cir. 2008) (affirming district court's award of attorney's fees), panel opin. vacated by grant of reh'g en banc, 562 F.3d 711 (5th Cir.), dist. ct. opin. aff'd by equally divided en banc court, 578 F.3d 293 (5th Cir. 2009); Green v. Administrators of Tulane Educ. Fund, 284 F.3d 642, 662 (5th Cir. 2002), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63-64 (2006); Board of Supervisors v. Smack Apparel Co., No. 04-1593, 2009 WL 927996, at *4 (E.D. La. Apr. 2, 2009) (Lemmon, J.); Speaks v. Kruse, No. 04-1952, 2006 WL 3388480, at *3-4 (E.D. La. Nov. 20, 2006) (Livaudais, J.). The requested rates are as follows:

| Timekeeper | Years of Experience | Requested Rate |
|---|---|---|
| Leslie Ehret | 22 | $225 |
| Peter Sperling | 23 | $225 |
| Suzanne Risey | 11 | $175 |
| David Curtis | 3 | $140 |
| Cheryl Comer (law clerk) | 0 | $ 90 |
| Ellen Kovach | 20 | $195 |
| Renee Culotta | 13 | $175 |
| Paralegal 1 | unknown | $ 60 |

| | | |
|---|---|---|
| Paralegal 2 | unknown | $ 90 |
| Paralegal 3 | unknown | $ 50 |

Thus, I find that the hourly rates set out above are reasonable and I will use these rates in awarding attorney's fees to defendant.

### E.   The Hours Charged by Defendant's Counsel

Next, I must determine the reasonable number of hours that defendant's counsel expended.   As a general proposition, all time that is excessive, duplicative or inadequately documented should be excluded.  <u>Watkins</u>, 7 F.3d at 457.  Attorneys must exercise "billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking fee awards.  <u>Green</u>, 284 F.3d at 662 (citing <u>Walker</u>, 99 F.3d at 769); <u>accord</u> <u>Hensley</u>, 461 U.S. at 433-34.  The fee seeker's attorneys are "charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment."  <u>Walker</u>, 99 F.3d at 770.

The hours expended by defendant's attorneys are documented in contemporaneous invoices.  Record Doc. Nos. 191-5, 191-6, 191-7, Defendant's Exh. B-1.  Defendant seeks attorney's fees as follows:

| <u>Timekeeper</u> | <u>Hours</u> | <u>Rate</u> | <u>Fees</u> |
|---|---|---|---|
| Ehret | 782.00 | $225 | $175,950.00 |
| Sperling | 206.30 | $225 | $ 46,417.50 |
| Risey | 906.60 | $175 | $158,655.00 |
| Curtis | 63.70 | $140 | $ 8,918.00 |
| Comer | 180.60 | $ 90 | $ 16,254.00 |

| Kovach | 50.40 | $195 | $ 9,828.00 |
| Culotta | 6.50 | $175 | $ 1,137.50 |
| Paralegal 1 | 123.70 | $ 60 | $ 7,422.00 |
| Paralegal 2 | 36.50 | $ 90 | $ 3,285.00 |
| Paralegal 3 | .50 | $ 50 | $ 25.00 |
| TOTAL | 2,356.80 | | $427,892.00 |

Defense counsel's representation of defendant throughout this matter, from motion practice through discovery and trial, was uniformly excellent. Nevertheless, a few deficiencies in the content of defendant's fee submissions warrant a correspondingly small deduction in the overall fee to be awarded. Defense counsel's affidavit states that the fees have been reduced in part by decreasing the hourly rates shown on some of the bills for its lead trial counsel from $265 (a rate which his performance would certainly justify) to $225, which is the rate that the client actually paid; and by reducing the hourly rates for an associate and a law clerk from $160 to $140 and $110 to $90, respectively, in accordance with this court's prior ruling, Record Doc. No. 96, that those were reasonable rates. Record Doc. No. 191-4, Defendant's Exh. B. University Healthcare also states in its memorandum that it wrote off 108.4 hours "that may be considered excessive or redundant." Record Doc. No. 191-2, defendant's memorandum in support, at p. 19.[3] These reductions constitute the exercise of some, limited billing judgment.

---

[3]I find that both parties in this case reasonably used the services of two attorneys at trial. Two partners and one associate attended the trial for defendant, but defense counsel only billed for the time of the two partners. Although this reduction is an appropriate exercise of billing judgment, I cannot tell from defendant's submissions whether it comprises none, a portion or all of the reduction to the associate's time that defendant states in its memorandum.

Defendant's fee submissions contain some vague descriptions, including, for example:  March 17, 2008, "begin review of documentation;" May 27, 2008, "review discovery;" July 1, 2008, "review file and discovery responses;" July 2, 2008, "review e-mail;" July 10 and 11, 2008, prepare an unspecified motion and memorandum for a total of 11.9 hours; September 16, 17 and 19, and October 6, 2008, "research cases" for a summary judgment motion; May 28, 2009, two months before trial, 1.8 hours for "trial preparation."  See Walker, 99 F.3d at 773 (rejecting fee request that contained "terse listings" such as "'library research,' 'analyzing documents,' 'reading background documents,' 'phone interviews,' with no further explanation"); LP&L, 50 F.3d at 326 n.11 (entries such as "revise memorandum," "review pleadings," "review documents" and "correspondence" inadequate to support fee request); Von Clark v. Butler, 916 F.2d 255, 259 & n.6 (5th Cir. 1990) (entries such as "'telephone call,' or 'trial preparation,' or 'travel to Beaumont to attend deposition' without any identification whatsoever of the subject matter" are "scanty and lacking in explanatory detail").

Defendant's fee submissions also contain a few examples of duplicative or excessive hours, including April 5 and May 5, 2009, identically described work and hours; July 1 through July 11, 2008, three attorneys reviewed plaintiff's discovery responses and worked on "discovery issues" and a motion to compel; April 7 through 14, 2009, three attorneys spent 57.2 hours (plus 4.9 paralegal hours) to research and write a reply memorandum to plaintiff's opposition to defendant's motion for summary

judgment; and July 8 and 9, 2009, two partners prepared for and attended a settlement conference with the court, when one would have sufficed.

Many of the billing entries are partially redacted, making it difficult to ascertain what tasks were accomplished and whether the time spent on a particular task was necessary and reasonable.[4]  I also cannot determine from defendant's submissions whether certain entries that are completely redacted comprise all or part of the 108.4 hours that defendant already deducted.  Examples of such vagueness caused by the partial redactions include:  March 27, 2008, time billed to "prepare for interview of ____; review document furnished by ____;" November 3, 2008, "e-mail to ____ regarding status of ____;" December 5, 2008, "conference with  ____ and ____ re: ____;" December 29, 2008, entry of "review cases" followed by more than two lines of redacted text; June 1, 2009, "met with ____ to prepare for trial."

These are merely a few examples of a number of inadequately documented, vague, duplicative and/or excessive entries.  I will not make individualized deductions for

_____

[4]Defendant states in its memorandum that it redacted "all proprietary and/or privileged information" in the invoices.  However, to the extent that the attorney-client privilege may protect some portions of the invoices, the privilege is waived by seeking reimbursement for attorney's fees.  Monroe's Estate v. Bottle Rock Power Corp., No. 03-2682, 2004 WL 737463, at *11 n.31 (E.D. La. Apr. 2, 2004) (Knowles, M.J.), aff'd, 2005 WL 119883 (E.D. La. Jan. 19, 2005) (Fallon, J.); Southern Scrap Mat'l Co. v. Fleming, No. 01-2554, 2003 WL 21474516, at *13 n.40 (E.D. La. June 18, 2003) (Knowles, M.J.); In re Central Gulf Lines, Inc., No. 97-3829, 2001 WL 30675, at *2 (E.D. La. Jan. 11, 2001) (Livaudais, J.); Tonti Props. v. Sherwin-Williams Co., No. 99-892, 2000 WL 506015, at *2 (E.D. La. Apr. 27, 2000) (Wilkinson, M.J.); Newpark Env't'l Servs., L.L.C. v. Admiral Ins. Co., No. 99-331, 2000 WL 136006, at *3 (E.D. La. Feb. 3, 2000) (Wilkinson, M.J.); C.J. Calamia Constr. Co. v. Ardco/Traverse Lift Co., No. 97-2770, 1998 WL 395130, at *2 (E.D. La. July 14, 1998) (Clement, J.).

specific entries like these because the task would be too onerous.  When billing records and other evidence are inadequate to document the hours that were written off as redundant, unproductive or excessive, or when no such hours were written off, a downward percentage adjustment is warranted to account for billing judgment.  Abner v. Kansas City So. Ry., No. 03-0765, 2007 WL 1805782, at *2 (W.D. La. June 21, 2007) (Stagg, J.), aff'd, 541 F.3d 372 (5th Cir. 2008) (citing Walker, 99 F.3d at 770; Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990); Leroy v. City of Houston, 831 F.2d 576, 585 (5th Cir. 1987)).  Accordingly, I will deduct 10% from the requested fees to account for these kinds of items.

Specific additional deductions for travel time can be identified and must also be made.  The Fifth Circuit and courts within the circuit have discounted for travel time in various types of lawsuits, usually awarding fees for only 50% of travel time, even if the attorney spent some of the time working.  In re Babcock & Wilcox Co., 526 F.3d 824, 827-28 (5th Cir. 2008); Watkins, 7 F.3d at 459; Hilton v. Executive Self Storage Assocs., Inc., No. H-06-2744, 2009 WL 1750121, at *12 (S.D. Tex. June 18, 2009); Board of Supervisors, 2009 WL 927996, at *6; Hopwood v. State, 999 F. Supp. 872, 914 (W.D. Tex. 1998), aff'd in relevant part & rev'd in part on other grounds, 236 F.3d 256, 281 n.107 (5th Cir. 2000); Jackson v. Capital Bank & Trust Co., No. 90-4734, 1994 WL 118322, at *26 (E.D. La. Mar. 30, 1994) (Heebe, J.); Smith v. Walthall Co., 157 F.R.D. 388, 393 (S.D. Miss. 1994).

Some entries for travel include the express statement that counsel worked on the case while on the airplane on July 20 and 21, 2009. I will not reduce those hours. However, other such entries for travel on September 15, 16, and 19, 2008; December 16, 2008; January 7, 2009; and July 12 and 13, 2009, do not include any such statement. In addition, that travel is included within block billing entries, making it impossible for the court to ascertain the actual travel time. Thus, I will discount all of the 64.2 hours billed by that attorney on those days by 25%, or 16.05 hours. Those hours multiplied by the attorney's rate of $225 per hour yields a fee reduction of $3,611.25.

Deducting $3,611.25 from the total requested amount of $427,892 leaves $424,280.75. Reducing that amount by 10% ($424,280.75 minus $42,428.07) to account for the other billing deficiencies discussed above yields $381,852.68. I further reduce that amount to account for the fact that defendant may recover fees only on plaintiff's contract claim, which was just one of five claims that were tried, or 20% of the claims in this case. The lodestar therefore is 20% of $381,852.68, for a recoverable attorney's fee of $76,370.54.

The lodestar amount "is presumptively reasonable and should be modified only in exceptional cases." Watkins, 7 F.3d at 457. University Healthcare has not requested any enhancement of its fees based on the Johnson factors. After eliminating the factors that are subsumed in the lodestar or prohibited from consideration, only four factors remain for an adjustment analysis: the customary fee, the undesirability of the case, the

nature and length of the professional relationship with the client and awards in similar cases. The customary fee and awards in similar cases have already been evaluated in establishing a reasonable hourly rate. Defendant does not argue that the nature and length of the professional relationship with its attorneys are relevant or that the case was undesirable. I find that the lodestar amount is reasonable in this case and that no further reduction or enhancement is appropriate or required.

Accordingly, I will award defendant reasonable attorney's fees of $76,370.54 in connection with the contract claim on which defendant was the prevailing party.

II. <u>PLAINTIFF'S MOTION TO DETERMINE WAGE PENALTY</u>

The court entered judgment on the jury's verdict that University Healthcare violated the Louisiana Unpaid Wages law by failing to pay Dr. King wages that she had earned before her employment terminated. The statute provides that, upon the discharge or resignation of an employee, the employer must "pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month." La. Rev. Stat. § 23:631(A)(1)(a), (b)). The judgment awarded Dr. King the mandatory monetary penalty for defendant's violation, pursuant to La. Rev. Stat. § 23:632. The only issue for post-judgment determination is how to calculate the penalty amount, which the parties stipulated during trial would be determined by the court on post-trial motion.

Section 23:632 provides: "Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at

the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages." La. Rev. Stat. § 23:632. Because the jury found that defendant never paid plaintiff wages that she had earned, ninety days wages at her daily rate of pay is the lesser amount.

The Louisiana penalty statute is penal in nature and must be strictly construed. Boudreaux v. Hamilton Med. Group, Inc., 644 So.2d 619, 621 (La. 1974); Schuyten v. Superior Sys., Inc., 952 So. 2d 98, 107 (La. App. 1st Cir. 2006).

Dr. King argues that her daily rate of pay should be calculated based on her employment contract and her actual earnings in 2006 of $314,997.28, as reported on her federal W-2 form.[5] Defendant's Trial Exh. 4. Her contract provides that she shall work "for forty-six weeks per year and a minimum of 40 hours per week, or other minimum number of weeks per year" as the parties may agree, for an annual salary of $300,000.[6] Plaintiff argues that her daily rate of pay should be based on her contractual minimum of 46 weeks per year at 5 days per week, for a total of 230 days. Thus, she contends, her

_____

[5]In her original memorandum, plaintiff calculated the penalty based on her 2006 actual earnings of $315,297.28. In her reply memorandum, she corrected that figure by deducting $300 to reflect that defendant had paid her $300 of the promised excess hours bonus of $33,000. The jury also found that $300 had already been paid when it awarded $32,700 in damages. The figure in the text above reflects the $300 deduction from plaintiff's reported wages.

[6]The contract was for a two-year period from March 2005 until March 2007. It provided for an original salary of $290,000, which would increase to $300,000 once plaintiff was board certified. Dr. King obtained board certification and her annual salary was $300,000 for the duration of the agreement.

actual earnings of $314,997.28 should be divided by 230 for a daily pay rate of $1,369.55. That figure, multiplied by 90 days, would yield a penalty of $123,259.50.

Plaintiff's calculation is excessive and not supported by the totality of the evidence or the case law. Her contract also provides that she will cover specialty call for a minimum of 90 days per year and will receive specialty call pay at a rate of $295 per day, not to exceed $60,000 per year. Joint Trial Exh. 1. The evidence showed that Dr. King was frequently on call. A salaried employee's daily rate of pay for penalty purposes is based on her contractual salary, <u>not</u> including fluctuating wages, such as commissions, fees or vacation pay or, in this case, specialty call pay. <u>Boyd v. Gynecologic Assocs. of Jefferson Parish, Inc.</u>, 15 So. 3d 268, 275 (La. App. 5th Cir. 2009); <u>Schuyten</u>, 952 So. 2d at 107; <u>Carragher v. Pittman Broad. Servs., L.L.C.</u>, 944 So. 2d 815, 816, 818 (La. App. 3d Cir. 2006); <u>Howser v. Carruth Mortgage Corp.</u>, 476 So. 2d 830, 836 (La. App. 5th Cir. 1985); <u>Hess v. Pembo</u>, 422 So. 2d 503, 508 (La. App. 4th Cir. 1982).

University Healthcare responds with three different options for calculating penalty wages. The first two are clearly without merit and do not warrant discussion.

The evidence and the case law support defendant's third argument that plaintiff's daily rate of pay should be calculated based on her contractual salary of $300,000 and a 52-week year. <u>Carragher</u>, 944 So. 2d at 816, 818; <u>Howser</u>, 476 So. 2d at 836; <u>Hess</u>, 422 So. 2d at 508. In both <u>Howser</u> and <u>Hess</u>, the court awarded the value of three months, or 3/12ths, of plaintiff's annual salary as penalty wages. I find that is the

appropriate calculation in this case. Dr. King's base salary of $300,000 divided by 12 and multiplied by 3 yields a total penalty amount of $75,000.

Accordingly, judgment will be entered in plaintiff's favor for a penalty of $75,000 in addition to the other amounts already awarded.

III.    PLAINTIFF'S MOTION TO SET AMOUNT OF ATTORNEYS' FEES

Judgment was entered in favor of Dr. King for reasonable attorney's fees, based on the jury's verdict that University Healthcare had violated both the Equal Pay Act and the Louisiana Unpaid Wages statute. Both statutes require the court to award reasonable attorney's fees to the prevailing plaintiff. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ."); La. Rev. Stat. § 23:632 ("Reasonable attorney fees shall be allowed the laborer or employee by the court[,] which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee . . . .").

In addition to seeking fees under these two statutes, plaintiff argues that she was the prevailing party on her breach of contract claim and is therefore entitled to attorney's fees under her written employment contract. This argument is meritless. The jury's verdict was clear: Dr. King did not prevail on her contract claim. There is no contractual or statutory basis for her to recover fees on any claim on which she did not prevail.

University Healthcare's argument that plaintiff did not bring "a well-founded suit for any unpaid wages," La. Rev. Stat. § 23:632, is equally meritless. As the court already ruled when entering judgment on the jury's verdict, Dr. King is entitled to her reasonable attorney's fees for both her Equal Pay Act and her unpaid wages claims.

Dr. King seeks an award of $201,406.50, representing 100% of the attorney's fees she incurred, after certain voluntary deductions. Fee awards under the Equal Pay Act are determined by using the lodestar method, Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006), while fee awards under La. Rev. Stat. § 23:632 are determined by using the reasonableness standard under Louisiana law. For the same reasons and applying the same standards described above concerning defendant's motion for attorney's fees, I will apply the lodestar analysis to the award of attorney's fees to plaintiff.

Dr. King argues that she should recover for all of the time that her attorneys spent working on the case because the work done on the claims is allegedly incapable of being segregated. University Healthcare responds that her fees should be reduced by 60% to 70% to reflect her lack of success on three of her five claims.

For similar reasons on which I rejected defendant's argument that it should recover 100% of its attorneys' time, I also reject plaintiff's argument that she should recover 100%. Fine, 305 F.3d at 757; No Barriers, Inc., 262 F.3d at 500-01; Lipsett, 975 F.2d at 940-41; Jason D.W., 158 F.3d at 211; Rendon, 883 F.2d at 399. The facts and some of

the legal issues underlying plaintiff's successful Equal Pay Act claim were similar to those for her unsuccessful sex discrimination claim, but were different from her breach of contract and retaliation claims, while the facts and issues underlying her successful unpaid wages claims were discrete from her other unsuccessful claims. Nonetheless, the invoices of plaintiff's counsel make it difficult to segregate particular issues. Thus, I will award plaintiff 40% of her fees, after making certain adjustments discussed below, because she prevailed on two out of her five claims.

A.     The Hourly Rates Charged by Plaintiff's Counsel

I first must determine whether the rates charged by plaintiff's counsel were reasonable. Plaintiff was initially represented in this lawsuit by Norman A. Mott, III, of Shields, Mott, Lund, L.L.P., who withdrew as counsel of record on January 23, 2009 after it became clear that he would be a fact witness in the case. Walter W. Christy and two associates in the firm of Coats Rose Yale Ryman & Lee enrolled as counsel on December 8, 2008 and have represented Dr. King since then.

Plaintiff's memorandum includes the declarations under penalty of perjury of Mott and Christy, each attesting to their attached contemporaneous billing invoices, the experience of each attorney and the customary hourly rates for the work of all attorneys and paralegals who worked on the case. Record Doc. No. 193-4, Plaintiff's Exh. 1, Christy declaration; Record Doc. No. 193-5, Plaintiff's Exh 2, Mott declaration. Dr. King also submitted the declarations under penalty of perjury of Mark N. Mallery and

Thomas J. McGoey, III, attorneys at other law firms, who were not involved in the instant case and who have practiced in the field of labor and employment law in New Orleans for 23 and 22 years, respectively. Mallery and McGoey attest that the hourly rates charged by plaintiff's lawyers in this case are customary and reasonable in the New Orleans area for attorneys with their respective experience. Record Doc. Nos. 193-6, 193-7, Plaintiff's Exhs. 3, 4.

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates and the rate is <u>not</u> contested. <u>LP&L</u>, 50 F.3d at 328. Plaintiff requests the following rates.

| Timekeeper | Years of Experience | Requested Rate |
|---|---|---|
| Norman Mott | 33 | $250 |
| Walter Christy | 41 | $275 |
| Christopher Moore | 13 | $250 |
| Christine White | 6 | $190 |
| Erin Wedge | 2 | $190 |
| P. McKinney (paralegal) | 30 | $115 |
| L. Talbot (law clerk) | 0 | $ 55 |

University Healthcare does not oppose most of the hourly rates sought by plaintiff's counsel, but it contends that the rates of associates Wedge and White and paralegal McKinney are excessive. I agree. I will adjust those rates to $175 for White, $140 for Wedge and $90 for McKinney, which are in line with the reasonable rates that

I have approved for defendant's counsel with similar experience. However, I also find that the unopposed rates of plaintiff's other attorneys and paralegals are well within the range of reasonable rates in the New Orleans market for attorneys and paralegals with the qualifications and experience established by the evidence. These hourly rates are also in line with recent decisions of the Fifth Circuit and this court awarding attorney's fees for the New Orleans legal market. Thompson, 553 F.3d at 868; Green, 284 F.3d at 662; Board of Supervisors, 2009 WL 927996, at *4; Speaks, 2006 WL 3388480, at *3-4.

B.    The Hours Charged by Plaintiff's Counsel

Next, I must determine the reasonable number of hours that plaintiff's counsel expended. The same standards concerning billing judgment and the sufficiency of the written submissions supporting a fee application as previously discussed in connection with defendant's motion for attorney's fees also apply to plaintiff's motion.

The hours expended by plaintiff's attorneys are documented in contemporaneous invoices. Record Doc. No. 193-4, Plaintiff's Exh. 1, Coats Rose invoices; Record Doc. No. 193-5, Plaintiff's Exh. 2, Shields, Mott invoices. Dr. King seeks attorney's fees as follows:

| Timekeeper | Hours | Hourly Rate | Requested Fees |
|---|---|---|---|
| Mott | 351.75 | $250 | $ 87,937.50 |
| Christy | 294.40 | $275 | $ 80,960.00 |
| Moore | 1.70 | $250 | $ 425.00 |
| White | 1.80 | $190 | $ 342.00 |

| | | | |
|---|---|---|---|
| Wedge | 154.60 | $190 | $ 29,374.00 |
| McKinney | 17.10 | $115 | $ 1,966.50 |
| Talbot | 7.30 | $ 55 | $ 401.50 |
| TOTAL | 828.65 | | $201,406.50 |

After adjusting the hourly rates for White, Wedge and McKinney to the reasonable rates found in the preceding section, the requested fees are as follows.

| Timekeeper | Hours | Reasonable Rate | Requested Fees |
|---|---|---|---|
| Mott | 351.75 | $250 | $ 87,937.50 |
| Christy | 294.40 | $275 | $ 80,960.00 |
| Moore | 1.70 | $250 | $ 425.00 |
| White | 1.80 | $175 | $ 315.00 |
| Wedge | 154.60 | $140 | $ 21,644.00 |
| McKinney | 17.10 | $ 90 | $ 1,539.00 |
| Talbot | 7.30 | $ 55 | $ 401.50 |
| TOTAL | 828.65 | | $193,222.00 |

Like defense counsel, plaintiff's counsel's representation was exemplary throughout the case. Nevertheless, some reductions for the requested fees must be made. I first address billing judgment. Christy states in his declaration that his customary hourly rate for discrimination cases is $325, but that he agreed to represent Dr. King at the rate of $275. In addition, Mott states in his declaration that he wrote off 68.5 hours and $17,125 in fees connected with various pleadings and motions, including unsuccessful discovery motions. Record Doc. No. 193-5, at p. 5. These reductions (including about 16% of Mott's original total of 420.25 hours) constitute the exercise of

some billing judgment.  However, Mott did <u>not</u> write off any of the 31.25 hours billed for work done between February 13, 2007 and January 31, 2008, when he represented plaintiff in connection with contract and settlement negotiations with defendant and her discrimination charge before the Equal Employment Opportunity Commission.  This work was done in connection with Dr. King's unsuccessful Title VII and contract claims on which she did not prevail at trial.  Her fees for this time cannot be recovered from defendant under either the Equal Pay Act or the Louisiana wages statute.

On the other hand, Mott spent 3 hours during this time period, on October 10 and 24, 2007, researching and drafting the complaint that was eventually filed.  The fees for this time are intimately connected to this action and are recoverable.  Therefore, I will deduct 28.25 hours (31.25 minus 3) for non-compensable hours billed by Mott before February 1, 2008.

Defendant contends that all of Mott's time after January 23, 2009 should be deleted because he was no longer counsel of record after that date.  Mott and Christy both declare that Mott continued to represent plaintiff in connection with defendant's motions for contempt and for summary judgment after he withdrew as counsel of record because of his substantial knowledge of the facts and law in the case.  Both attorneys aver that there was no duplication of effort between Mott and any other lawyer during the period of Mott's continued representation, which ended on May 7, 2009.  Defendant's contention that all of Mott's time should be deleted is not supported by citation to any

authority. This court routinely awards fees for attorneys who are not formally enrolled as counsel, but who work on the matter, as indeed I have done for three of defendant's attorneys in this case.

University Healthcare also argues that plaintiff cannot recover for certain duplicative work by Mott and Christy. Hours billed are not unreasonable simply because two attorneys billed their time to the matter. <u>Young v. Sea Horse Venture IV, LLC</u>, No. 3:07-CV-1818-M, 2009 WL 614823, at *2 (N.D. Tex. Mar. 10, 2009). However, my review of the invoices reveals some unnecessary duplication between plaintiff's lead counsel, including the preparation for and attendance of both lawyers at the depositions of James Montgomery and George Jurgens on December 22 and 23, 2008, and their work on a surreply to defendant's supplemental memorandum in support of its motion for summary judgment between April 16, 2009 and April 23, 2009. Therefore, I will deduct duplicative time as follows:

| December 15, 2008 | 1.0 |
| December 16, 2008 | 2.5 |
| December 22, 2008 | 1.0 |
| December 23, 2008 | 3.5 |
| April 16, 2009 | 2.5 |
| April 20, 2009 | 2.5 |
| April 21, 2009 | 4.5 |
| <u>April 23, 2009</u> | <u>.5</u> |
| TOTAL | 18.0 |

Thus, after deducting the 28.25 hours and the 18 hours (total 46.25 hours) discussed above, Mott's requested hours are reduced from 351.75 to 305.5 hours. When these deductions are combined with the 68.5 hours that Mott wrote off, his original total hours billed have been reduced by about 27%. I find that no additional reductions need be taken from Mott's time.

As for Christy and his associates and paralegal, my review of the Coats Rose invoices indicates that their time is generally well documented. Nothing in the evidence reflects a lack of billing judgment in this regard, and I find that no further reductions to their time are necessary.

University Healthcare also argues that plaintiff cannot recover fees for working on the instant post-trial motions. To the contrary, Dr. King may recover fees for her motion to determine penalty wages, as that is part of her substantive, successful claim under the Louisiana statute. In addition, it is settled that a prevailing plaintiff is entitled to an award of reasonable attorney's fees in connection with the time spent to prepare the fee application. Riley v. City of Jackson, 99 F.3d 757, 760 (5th Cir. 1996); Cruz v. Hauck, 762 F.2d 1230, 1233-35 (5th Cir. 1985); Lewallen v. City of Beaumont, No. 1:05-CV-733-TH, 2009 WL 2175637, at *8 (E.D. Tex. July 20, 2009); Chaparral Texas, L.P. v. W. Dale Morris, Inc., No. H-06-2468, 2009 WL 455282, at *12 n.5 (S.D. Tex. Feb. 23, 2009).

Applying the reasonable rates to the reasonable hours for Mott and the Coats Rose attorneys yields the following total requested fees.

| Timekeeper | Hours | Rate | Fees |
|---|---|---|---|
| Mott | 305.00 | $250 | $ 76,250.00 |
| Christy | 294.40 | $275 | $ 80,960.00 |
| Moore | 1.70 | $250 | $ 425.00 |
| White | 1.80 | $175 | $ 315.00 |
| Wedge | 154.60 | $140 | $ 21,644.00 |
| McKinney | 17.10 | $ 90 | $ 1,539.00 |
| Talbot | 7.30 | $ 55 | $ 401.50 |
| TOTAL | 781.90 | | $181,534.50 |

Finally, to account for plaintiff's success and entitlement to attorney's fees on only two of her five claims, I find that the lodestar is 40% of the requested amount, or $72,613.80.

Plaintiff has not requested any enhancement of her fees based on the Johnson factors. After eliminating the factors that are subsumed in the lodestar or prohibited from consideration, only four factors remain for analysis: the customary fee, the undesirability of the case, the nature and length of the professional relationship with the client and awards in similar cases. The customary fee and awards in similar cases have already been evaluated in establishing a reasonable hourly rate. Dr. King does not argue that the nature and length of the professional relationship with her attorneys are relevant or that

the case was undesirable. I find that the lodestar amount is reasonable in this case and that no further reduction or enhancement is appropriate or required.

Accordingly, I award Dr. King a reasonable attorney's fee of $72,613.80.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that defendant's Motion for Attorneys' Fees is GRANTED IN PART AND DENIED IN PART, and that judgment will be entered awarding defendant a reasonable attorney's fee of $76,370.54.

IT IS FURTHER ORDERED that Plaintiff's Motion to Determine Wage Penalty is GRANTED IN PART AND DENIED IN PART, and judgment will be entered awarding plaintiff a penalty of $75,000 pursuant to La. Rev. Stat. § 23:632.

IT IS FURTHER ORDERED that Plaintiff's Motion to Set Amount of Attorneys' Fees is GRANTED IN PART AND DENIED IN PART, and judgment will be entered awarding plaintiff a reasonable attorney's fee of $72,613.80.

New Orleans, Louisiana, this ____4th____ day of November, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE